IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| HAZEL JEANETTE COOLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 2:14-cv-00264-LSC |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OF OPINION

I.     Introduction

The plaintiff, Hazel Jeanette Cooley, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB"). Ms. Cooley timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Cooley was sixty years old at the time of the Administrative Law Judge's ("ALJ's") decision. (Tr. at 17, 49-50.) She has a high school education, and has completed additional coursework in advanced keyboarding and medical terminology transcription. (Tr. at 139-40.) Her past work experiences include employment as an access representative at a hospital, a decorator for a construction company, a

secretary, and a pharmaceutical warehouse worker. (Tr. at 140, 159-63). Ms. Cooley claims that she became disabled on June 1, 2009, due to chronic pain, fibromyalgia, and nerve problems. (Tr. 138-40, 146-48.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB. *See* 20 C.F.R. §§ 404.1520; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. § 404.1520(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id.* § 404.1520(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* § 404.1520(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. § 404.1509 will result in a finding of not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(ii). The decision depends on the medical evidence contained in the

record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 404.1520(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. § 404.1509 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* § 404.1520(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of her past relevant work. *See id.* § 404.1520(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent her from performing her past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC,

age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* § 404.1520(a)(4)(v). If the plaintiff can perform other work, the evaluator will find her not disabled. *Id.; see also* 20 C.F.R. § 404.1520(g). If the plaintiff cannot perform other work, the evaluator will find her disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g).

Applying the sequential evaluation process, the ALJ found that Ms. Cooley was insured through the date of his decision and that Ms. Cooley has not engaged in substantial gainful activity since the alleged onset of her disability. (Tr. at 22.) According to the ALJ, Plaintiff's degenerative cervical disc disease, polyarthralgia, and myalgia are considered "severe" impairments based on the requirements set forth in the regulations. (*Id.*) However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 24.) The ALJ did not find Ms. Cooley's allegations to be totally credible, and he determined that her residual functional capacity allows her to perform light work, with the following limitations:

> She can lift and carry 20 pounds occasionally and 10 pounds frequently. She can sit 6 hours and stand/walk a combination of 6 hours during an 8-hour workday. She can occasionally climb ramps and stairs and occasionally balance, stoop, kneel, crouch, and crawl. She is unable to climb ladders, ropes, or scaffolds and cannot lift above shoulder level with the left upper extremity. She is unable to perform around work

hazards and must avoid concentrated exposure to extreme cold, vibrations, and pulmonary irritants.

(Tr. at 24-27.)

According to the ALJ, Ms. Cooley is able to perform her past relevant work as an office manager and hospital admission clerk. (Tr. at 28.) This work is semi-skilled in nature and performed at the sedentary level of physical exertion. (*Id.*) Further, even though Plaintiff cannot perform the full range of light work, the ALJ used the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, to find that there are also a significant number of other jobs in the national economy that Ms. Cooley is capable of performing, such as general cashier and telephone quote clerk. (Tr. at 28-29.) The ALJ concluded his findings by stating that Plaintiff " has not been under a disability, as defined in the Social Security Act, from June 1, 2009, through the date of this decision." (Tr. at 29.)

## II.   Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v.*

*Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). " The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.' " *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for " despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety

to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.   Discussion

Ms. Cooley alleges that the ALJ's decision should be reversed and rendered (or, in the alternative, remanded for further fact-finding) for two reasons. First, she believes that the ALJ erred by concluding that Plaintiff did not have a "severe" impairment of fibromyalgia. (Doc. 9 at 7.) And second, Ms. Cooley contends that the ALJ did not afford proper consideration to her subjective complaints of pain when he made his determination. (Doc. 9 at 8.)

### A.   Severity of Plaintiff's Impairments

Ms. Cooley argues that the ALJ erred by not listing fibromyalgia as a "severe impairment." (Doc. 9 at 7.) The ALJ's inquiry into the severity of the plaintiff's alleged impairments is the second part of the five-step test recounted above. It requires that the plaintiff show that the impairment be "severe," meaning that it "significantly limits [her] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Though "claimant's burden at step two is mild," it is

nevertheless her burden to bear. *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). "[C]onsequently, [s]he is responsible for producing evidence in support of [her] claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

The ALJ uses the Commissioner of Social Security's policy on the evaluation of fibromyalgia in determining whether a claimant has a medically determinable impairment ("MDI"). *See* Social Security Ruling ("SSR") 12-2p, 2012 WL 3104869. This policy requires that the determination of fibromyalgia not "rely upon the physician's diagnosis alone," but rather that it be supported by medical evidence. *Id.* at *2. Specifically, "[w]e will find that a person has an MDI of [fibromyalgia] if the physician diagnosed [fibromyalgia] and provides the evidence we describe in Section II.A or section II. B, and the physician's diagnosis is not inconsistent with the other evidence in the person's case record." *Id.*

Those two sections allow for two different sets of criteria to be used in diagnosing fibromyalgia. *Id.* The plaintiff need only meet one of them. The first, set forth in Section II.A and based on the 1990 American College of Rheumatology Criteria for the Classification of Fibromyalgia, requires: a) a history of widespread pain that persists for at least 3 months and presents in all quadrants of the body (including the axial skeletal system); b) at least 11 (of 18 possible) positive tender points, found

on both sides of the body and both below and above the waist; and c) evidence that other disorders that might be causing the symptoms were excluded. *Id.* at *2-3. The second set, based on the 2010 American College of Rheumatology Preliminary Diagnostic Criteria and recounted in Section II.B, requires: a) a history of widespread pain in all quadrants of the body (defined the same as above); b) repeated manifestations of six or more specific signs or co-occurring conditions ("especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome"-though also including muscle pain and weakness, headache, pain in the abdomen, numbness, and nervousness); and c) evidence that other disorders that could be the cause of the symptoms were excluded. *Id.* at *3.

The ALJ reviewed the notes and diagnoses of Plaintiff's physicians and found that they did not meet the requirements set forth in these tests. (Tr. at 24.) Specifically, the ALJ noted that Dr. Jasvinder Singh, a rheumatologist whom Ms. Cooley saw in February of 2011, "assessed [that] the claimant suffered from polyarthralgia and myalgia. His conclusion is consistent with SSR 12-2p in that there is no indication in his report that the claimant had at least 11 positive tender points bilaterally as required by Section II.A of SSR 12-2p." (*Id.*) The ALJ continued:

" Further, although the claimant did experience some symptoms of fibromyalgia, the record evidence fails to establish that the claimant suffered with 'repeated manifestations' of such symptoms over a longitudinal period of time as required by Section II.B. of the Ruling. Accordingly, fibromyalgia is not a medically determinable impairment in this particular case." (*Id.*)

Plaintiff argues that the ALJ did not properly take account of all of Dr. Singh's notes and conclusions. (Doc. 9 at 7.) Specifically, Plaintiff points to Dr. Singh's notes from his physical examination and assessment plan. (*Id.*) These appear more fully below:

Physical Examination:

. . .

[Patient] had generalized tenderness on examination, which was far more marked on the fibromyalgia tender points. She also had mild tenderness of the joints but not as bad as the fibromyalgia tender points. She had all the tender points positive. In addition, she also had bilateral trochanteric bursae tender on examination. . . .

Assessment and Plan:

1.      Polyarthralgia and myalgia: There are no signs of inflammatory arthritis, although [patient] has noticed on and off swelling. I am checking some x-rays, as well as some lab tests to rule out atypical form of polyarthritis, although my suspicion is low. Her symptomatology and presentation is very consistent with fibromyalgia. I agree with her primary care physicians about treating with SSRIs to temper her sleep

pattern out. We also discussed that exercise is a key component of fibromyalgia treatment and she should try to adapt some regular exercise. She may also need follow-up with her primary care physician regarding possible diagnosis of depression and treatment for it.

2.     Trochanteric bursitis: This may be part of fibromyalgia but I will evaluate her again and if needed give her injections for trochanteric bursitis next visit.

(Tr. at 330.) Dr. Singh's notes also include a "15-point review of systems [that] is completed by the patient." (*Id.*) Dr. Singh noted that this review "was significant for":

Fatigue, weakness, headaches, dizziness, muscle spasm, sensitivity, or pain of hands or feet, numbness and tingling of hands and feet, tender neck glands, ringing in ears, double or blurred vision, eye dryness, feels like something in the eye, sort tongue, marked dryness, frequent sore throats, hoarseness, shortness of breath, swollen legs and feet, night sweats, nausea, stomach pain relived by food or milk, increase in constipation, heartburn, skin tightness, muscle weakness, muscle tenderness, joint swelling and pain in elbows, knees, shoulders, legs, hips, and hands and morning stiffness lasting one hour.

(*Id.*)

Comparing this report to either set of requirements set forth in SSR 12-2p does indeed raise some questions about some of the ALJ's conclusions. First, Plaintiff's argument that Dr. Singh actually did diagnose her with fibromyalgia is reasonable. Dr. Singh wrote that Plaintiff's presentation "is very consistent with fibromyalgia." He

also discussed with Plaintiff the need for exercise because "exercise is a key component of fibromyalgia treatment." Further, in his discussion of Plaintiff's trochanteric bursitis, Dr. Singh noted that this condition "may be part of [patient's] fibromyalgia." Though it is true that Dr. Singh did not explicitly diagnose Plaintiff with the condition, it is still reasonable to interpret the above statements to conclude that Dr. Singh simply assumed that Plaintiff was suffering from fibromyalgia.

Second, though the ALJ is correct in finding that Dr. Singh did not specifically note that Plaintiff presented at least 11 specific positive tender points, as is required by SSR 12-2p Section II.A., Plaintiff is also correct that Dr. Singh did record that "[Plaintiff] had all the tender points positive." Since Dr. Singh is a rheumatologist, and since the American College of Rheumatology is the entity that defines what the 18 tender point sites are, it is safe to assume that Dr. Singh was referring to those sites with the shorthand "all the tender points."

Further, if this were indeed the case, then the ALJ's finding that Plaintiff failed to prove that she suffered from "repeated manifestations" of at least six of the symptoms listed in the Section II.B test would not matter. (Tr. at 24.) That is, the SSR requires that either the 1990 ACR criteria or the 2010 ACR criteria be used; it does not require that Plaintiff meet both. *See* SSR 12-2p. Since the 11-point positive tender

requirement appears in the first, and since that requirement appears to be met, there would be no need to also require a showing of the repeated manifestations of the different set of symptoms so long as Plaintiff could show that she met the other two requirements of the first test: the history of widespread pain and the exclusion of other disorders that could be causing her symptoms.

Even if this Court were to accept all of this as true, however, there still exists substantial evidence to support the ALJ's conclusion that Plaintiff's fibromyalgia symptoms do not constitute a medically determinable impairment. First and foremost, there is no evidence that Plaintiff ever returned to Dr. Singh, despite his telling her to do so. (Tr. at 331.) Because of this, there was no evidence in the record for the ALJ to find out whether Dr. Singh was ever able to rule out an atypical form of polyarthritis as the cause of Plaintiff's symptoms. (*See* Tr. at 330.) Without this evidence, the ALJ could not find that other disorders had been excluded—a requirement of an MDI for fibromyalgia under either of the SSR tests. *See* SSR 12-2p, 2012 WL 3104869 at *2-3.

More fundamentally, though, the ALJ's findings are supported by substantial evidence, whether or not they are the conclusions this Court would have come to, and whether or not Plaintiff's interpretation of the facts is reasonable. For example, that Dr. Singh did not list fibromyalgia along with his other diagnoses of polyarthralgia,

myalgia, and trochanteric bursitis lends support to the ALJ's conclusion that Plaintiff was never actually diagnosed with fibromyalgia, the first requirement that has to be met before fibromyalgia can be considered a "severe" impairment at step two. The same is true regarding Dr. Singh's treatment of the 18 tender point sites: the doctor never explicitly stated that Plaintiff presented at least 11 tender sites, as is required under SSR 12-2p Section II.A. Further, the ALJ was correct in finding that the list of complaints Plaintiff made to Dr. Singh did not constitute "repeated manifestations of six or more FM symptoms" as required under SSR 12-2p Section II.B. Although all of the fibromyalgia symptoms that appear in the test's listing also appear in Dr. Singh's 15-point review: muscle pain, fatigue, dizziness, headache, weakness, eye dryness, dry mouth, and stomach pain, the ALJ correctly noted that these symptoms were merely self-reported by Plaintiff and thus do not actually establish that the conditions actually manifested, much less that they did so for more than three months.

Though this Court finds Plaintiff's arguments reasonable, it also finds that there exists substantial evidence to support the ALJ's decision not to list fibromyalgia among Plaintiff's severe impairments. As such, it must affirm that decision. *See Miles*, 84 F.3d at 1400.

B.   Ms. Cooley's Allegations of Pain

Plaintiff asserts that the ALJ's evaluation of her subjective complaints of pain was improper. Specifically, Ms. Cooley alleges that the ALJ erred because " [b]ased on the medical evidence of record demonstrating chronic pain and fatigue, Plaintiff should have been found 'disabled' by the ALJ." (Doc. 9 at 11.) Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). To establish disability based upon pain and other subjective symptoms, " [t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

The ALJ is permitted to discredit the claimant's subjective testimony of pain and other symptoms if he articulates explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996) (" [T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record

in reaching a conclusion about the credibility of the individual's statements.").
Factors the ALJ will consider in determining the severity of an individual's symptoms
include the nature, location, duration, frequency, and intensity of the symptoms; any
aggravating factors that might exist; the type and effectiveness of any medication or
other treatment options that have been used to treat the symptoms or pain; and the
daily activities of the claimant. *See* 20 C.F.R. § 404.0529. Although the Eleventh
Circuit does not require explicit findings as to credibility, " 'the implication must be
obvious to the reviewing court.' " *Dyer,* 395 F.3d at 1210 (quoting *Foote,* 67 F.3d at
1562). "[P]articular phrases or formulations" do not have to be cited in an ALJ's
credibility determination, but it cannot be a "broad rejection which is not enough to
enable [the district court or this Court] to conclude that [the ALJ] considered her
medical condition as a whole." *Id.* (internal quotations omitted).

In this case, the ALJ found that Ms. Cooley met the first prong of the Eleventh
Circuit's standard. (Tr. at 25.) However, he found that Plaintiff's "statements
concerning the intensity, persistence and limiting effects of these symptoms are not
credible to the extent they are inconsistent with the . . . residual functional capacity
assessment." (*Id.*) The ALJ acknowledged Plaintiff's myalgia and neck and back
problems, but found troubling the fact that "[a]lthough the claimant alleges

debilitating symptoms associated with her fibromyalgia, there is no indication she ever returned to Dr. Singh for additional treatment." (Tr. at 26.) Further, he noted that when consultatively examined by Dr. Badewa in April of 2011, Plaintiff denied stiffness, swelling, arthralgias, and muscle weakness. (Tr. at 26.) Dr. Badewa found that Plaintiff suffered from diminished range of motion, polyarthraligas in the shoulders, hips, knees, and spine, backache, and general myalagias. (Tr. at 26; 333-44.) He also found, however, that Plaintiff maintained full range of motion and muscle strength in her elbows, wrists, knees, ankles, and fingers; normal hand dexterity; and normal muscle strength in her extremities. (*Id.*)

The ALJ also found that Plaintiff's doctors reported that medical and other treatment options had improved her conditions with regard to her cervical disc disease. (Tr. at 26.) The record shows treatment for Plaintiff's neck pain dating back to 2007, but also reveals that, due to various medications and prescribed aquatic physical therapy, Plaintiff's doctor was satisfied that the medication regimen was working. (Tr. at 26-27.)

Perhaps most significantly, the ALJ listed a number of specific instances that he thought negatively affected Plaintiff's credibility. (Tr. at 27.) For instance, Plaintiff testified that a physician had given her lifting restrictions, but the ALJ found no such

restrictions in her medical record. (*Id.*) The ALJ continued:

> The claimant testified she was terminated from her last job due to excessive absenteeism and an inability to sit. However, this testimony is inconsistent with the objective medical evidence which shows only intermittent treatment for the claimant's medical problems and that since February 2011, her medical problems have been responding well to medication. She testified she is unable to stand or walk prolonged periods due to back, hip, and leg pain yet she indicated in her Function Report [that] she could walk ¼ to ½ mile. The claimant has also been inconsistent regarding daily living activities. She testified her husband performed most household chores, prepared the meals, and did all the driving. However, in her Function Report, the claimant indicated she was able to perform these activities. Although the claimant testified she had to lie down several hours after taking her pain medication, there is no indication in the record of complaints of medication side effects by any of her examining or treating sources.

(Tr. at 27; *see also* Tr. at 150-57 (Function Report); Tr. at 185-305 (Treatment Records); Tr. at 306-19 (Progress Notes); Tr. at 346-85 (Treatment Records); and Tr. at 391-401 (Progress Notes).)

In sum, the ALJ found that "claimant's self-reported limitations are not consistent with the medical evidence and she simply alleges a greater degree of debilitation than what objective evidence can support." (Tr. at 27.) It appears to the Court that the ALJ specifically addressed Plaintiff's allegations of pain in his opinion, and he provided explicit and reasonable reasons for rejecting her testimony. The objective medical and other evidence supports the ALJ's conclusion that Plaintiff's

condition did not cause disabling limitations and instead shows that she could perform a reduced range of light work. (Tr. at 27-29.)

IV.    Conclusion

Upon review of the administrative record, and considering all of Ms. Cooley's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and is in accord with the applicable law. A separate order will be entered.

Done this 11th day of February 2015.

L. Scott Coogler
United States District Judge
[160704]